UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ALVIE FORBIS and wife, MARGARET MARIE FORBIS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:04-CV-582 (Shirley) |
| ENGLAND, INC., formerly known as ENGLAND/CORSAIR, INC., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the Court on the defendant's Motion to Dismiss/Motion for Summary Judgment [Doc. 28], which was filed on October 14, 2005. The plaintiff responded on November 3, 2005 [Doc. 36], and the Court heard oral argument on the motion on December 9, 2005. Participating on behalf of the plaintiffs was attorney Thomas Noe. Participating on behalf of the defendant was attorney Gary Prince.

### I.  Factual Background

On December 10, 2003, the plaintiff Alvie Forbis was employed by Carpenter Company ("Carpenter") as a driver of a tractor trailer rig. Carpenter Company produces foam that is sold to the defendant England, Inc., which uses the foam in products such as La-Z-Boy chairs. The plaintiff was responsible for delivering the foam to the defendant's plant in New Tazewell, Tennessee.

When the Carpenter tractor trailer arrives at the defendant's plant, the tractor trailer is backed up against the dock. As part of the unloading process, a dock plate is placed connecting

the trailer and the dock. The dock plate acts like a bridge in order for a forklift to enter the trailer and remove the compressed foam. It is put into place by a forklift operated by one of the defendant's employees. The dock plate is made of aluminum and weighs approximately 160 pounds. The Carpenter foam is compressed in compartments in the tractor trailer, and it is necessary for hydraulics to be used to release the compressed compartments holding the foam. The hydraulic device is located toward the end of the trailer, and when the dock plate is put into place, it covers the hydraulic device. Therefore, it is necessary for the dock plate to be removed in order for the Carpenter driver to take a metal rod and access the hydraulic device to release the compressed foam.

James Russell was the supervisor in charge of the foam department where the plaintiff's Carpenter truck was being unloaded on December 10, 2003. Russell testified that it was the policy of England that the delivering Carpenter driver was required to lift the dock plate to access the hydraulic device. For the purpose of this motion, the defendant concedes that it was England's policy not to help Carpenter employees with the dock plate.

The plaintiff began making deliveries to the England plant in September, 2003. On his first trip to the plant, the plaintiff approached Robbie Buchanan, the forklift operator, and asked him about the procedures for unloading the Carpenter trailer. Buchanan told the plaintiff that the plaintiff was expected to lift the dock plate to access the hydraulic device. The plaintiff complained about England's policy to his supervisor and the safety personnel at Carpenter. He did not complain directly to England because it was Carpenter's policy that complaints be made to Carpenter and not to the customer company.

The incident in question occurred on December 10, 2003. During the process of unloading the foam, the plaintiff was required to lift the dock plate multiple times in order to access

2

Case 3:04-cv-00582   Document 41   Filed 01/18/06   Page 2 of 9   PageID #: 5

the hydraulic device. Because of his physical condition and the limited space between the dock plate and the side of the trailer, it was not feasible for the plaintiff to reach down and lift the dock plate with two hands. At the time of the incident in question, the plaintiff was 62 years old, weighed approximately 260 pounds, and was not in good health. Additionally, the plaintiff had a previous injury to his knee around 1995, which resulted in a tear to the tendon. He had a permanent 50-pound lifting restriction as a result of that injury, which made it more difficult for him to bend down to get in a position to lift the dock plate. Due to the limited space, the plaintiff had to use one hand to start raising the dock plate; once the plate was partially raised, he was able to put his other hand under the plate to continue the lifting process. The second time that the plaintiff attempted to lift the dock plate with only one hand, the plaintiff sustained injuries to his left arm and shoulder.

     Two Carpenter Company drivers who had made deliveries to England prior to the plaintiffs' injury had requested that an alternative method for removing the dock plate be used during the unloading process. One of these drivers, Mark Gibbs, states in his affidavit that prior to the plaintiff's injury, he had asked Robbie Buchanan if they could have a hole drilled in the dock plate in order to access the hydraulic device. Gibbs told Buchanan that a La-Z-Boy plant he had previously delivered to had a similar dock plate that blocked access to the hydraulic device, and that La-Z-Boy had agreed to have a hole drilled in the dock plate so that it could be accessed through the hole and did not have to be lifted or moved. Gibbs offered to arrange to have the hole drilled with reinforcement in the dock plate by Carpenter so that Gibbs and other Carpenter drivers would not have to lift the dock plate themselves. Gibbs states in his affidavit that Buchanan refused this offer and told Gibbs that it was Gibbs' job to lift the dock plate. Gibbs testified that it was "risky and

3

even dangerous" to lift the dock plate, especially if the aluminum floor of the trailer was wet or was frosted over in cold weather.

Another Carpenter truck driver, Jackie Moore, testified that he also made deliveries to the defendant's plant prior to the plaintiff's injury. Moore testified that the forklift which removed the foam bundles could have also been used to move the dock plate out of the way so that the Carpenter driver could access the hydraulic device. Moore testified that he asked Buchanan to use the forklift to move the dock plate but that Buchanan refused to do so, stating, "That's your job." After that, Moore testified he acquiesced to the defendant's demand that he lift the dock plate without any assistance.

II. **The Summary Judgment Standard**

The defendant styled its motion as a "Motion to Dismiss/Motion for Summary Judgment" and seeks dismissal of the plaintiff's action pursuant to both Rule 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure. The defendant, however, has submitted several deposition excerpts and other exhibits in support of its motion. Because the defendant has presented materials outside the pleadings, the Court will treat the defendant's motion solely as one for summary judgment. See Fed. R. Civ. P. 12(b)(6).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of establishing that there is no genuine issue of material

4

fact lies upon the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

In considering a motion for summary judgment, the Court must take all of the evidence submitted by the non-moving party as true, and must draw all reasonable inference in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. Id. at 248, 106 S. Ct. at 2510. The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. Id.

Once the moving party presents evidence sufficient to carry its burden under Rule 56, the non-moving party may not rest upon its pleadings, but must affirmatively set forth, by affidavits or otherwise, "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). An entry of summary judgment is mandated if, "after adequate time for discovery and upon motion, [the non-moving party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S. Ct. at 2552. In reviewing the evidence, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52, 106 S. Ct. at 2512.

**III.     Analysis**

The defendant first argues that it is entitled to summary judgment because it did not breach any duty owed to the plaintiff. While the defendant concedes that it owed the plaintiff a duty to provide a safe work environment, the defendant contends that there was no breach of that duty because the plaintiff's injury was not reasonably foreseeable. Further, the defendant argues, there was no duty owed to the plaintiff or any other Carpenter employee to lift or to help lift the dock plate during their deliveries.

To establish a negligence action under Tennessee law, a plaintiff must establish the following elements: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct of the defendant that fell below the applicable standard of care, amounting to a breach of the duty owed to the plaintiff; (3) an injury or loss sustained by the plaintiff; (4) causation in fact; and (5) proximate, or legal, causation." Burroughs v. Magee, 118 S.W.3d 323, 327-28 (Tenn. 2003). The Tennessee Supreme Court has defined "duty" as "the legal obligation that a defendant owes a plaintiff to conform to a reasonable person standard of care in order to protect against unreasonable risks of harm." Id. A risk is considered unreasonable "if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm" McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995). In making this determination, the Court may consider a number of factors, including

> the foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; and the relative safety of alternative conduct.

Coln v. City of Savannah, 966 S.W.2d 34, 39 (Tenn. 1998) (quoting McCall, 913 S.W.2d at 153).

6

As the defendant concedes, the defendant, as the owner and occupier of the premises, had a duty to exercise ordinary care to maintain its premises in a safe condition and to provide the plaintiff a reasonably safe place to work See McCormick v. Waters, 594 S.W.2d 385, 388 (Tenn. 1980). The scope of this duty "is grounded upon the foreseeability of the risk involved." Jones v. Exxon Corp., 940 S.W.2d 69, 72 (Tenn. Ct. App. 1996).

Viewing, as the Court must, the evidence in the light most favorable to the plaintiff, the Court cannot say that the plaintiff's injury in this case was not reasonably foreseeable. The dock plate that the Carpenter drivers were required to lift weighed approximately 160 pounds. Prior to the plaintiff's injury, two other Carpenter drivers, recognizing the risk involved in lifting the heavy dock plate, requested that alternative means be used to lift it. The defendant, however, refused. A reasonable jury could conclude that the alternative means posed by the Carpenter employees – either drilling a hole in the plate or having the forklift remove the dock plate for the driver – were safer means of lifting the plate and that such conduct would have imposed a minimum burden on the defendant. The plaintiff has presented evidence that at least one other facility drilled a hole in the dock plate to provide easier access to the hydraulic system in the Carpenter vehicles and that a Carpenter employee offered to arrange for the hole to be drilled in the defendant's dock plate. The plaintiff also has presented evidence that the defendant's forklift was used to initially put the dock plate in place and was available throughout the unloading process to move the dock plate. Based upon the evidence presented by the plaintiff, the Court finds that there are genuine issues of material fact as to whether the defendant acted reasonably in refusing to either help Carpenter employees with the dock plate or by failing to provide alternative means to lift it as proposed, as well as genuine issues of material fact as to whether it was foreseeable that injuries could result from

7

requiring the plaintiff (and other drivers) to lift the dock plate without assistance and without the proposed alternative means. As such, the Court finds that there are genuine issues of material fact as to whether the defendant breached its duty to provide safe working conditions to the plaintiff.

The defendant further argues that it is entitled to summary judgment because the plaintiff was guilty of comparative fault as a matter of law. Specifically, the defendant contends that the plaintiff knew that the dock plate was heavy, as he had done this type of work before; that the plaintiff was aware that he had permanent lifting restrictions; and that the plaintiff did not ask for any type of assistance in lifting the dock plate.

Under Tennessee's system of comparative fault, a plaintiff may not recover if his fault is fifty percent or more of the cause of the accident. McIntyre v. Balentine, 833 S.W.2d 52, 57 (Tenn. 1992). The Court may decide this issue as a matter of law if, taking the strongest legitimate view of the evidence in favor of the plaintiff, the Court can determine "beyond question" that the plaintiff's fault is equal to or greater than the defendant's. Wright v. 304 Broadway, L.L.C., No. M2002-00952-COA-R3-CV, 2003 WL 21004634, at *2 (Tenn. Ct. App. May 6, 2003) (citing Eaton v. McLain, 891 S.W.2d 587, 590 (Tenn. 1994)).

In the present case, it is undisputed that the plaintiff was aware that the dock plate was heavy. However, the plaintiff testified that he had lifted the dock plate previously without incident. It is also undisputed that the plaintiff had a permanent lifting restriction. This restriction, however, was due to a knee injury and not to any limitation in the plaintiff's arm or shoulder. Based on the evidence presented, the Court cannot determine what, if any, effect this restriction had on the plaintiff's injury. Finally, while it is undisputed that the plaintiff did not ask for assistance in lifting the dock plate, the plaintiff explained in his deposition that such action was futile as he was advised

8

of England's policy in September 2003 that he, as the Carpenter driver, was expected to lift the dock plate himself. He further testified that although he complained to his employer about the situation, he did not complain to England directly because it was Carpenter's policy that complaints not be made to the customer company. Accordingly, the Court cannot say as a matter of law that the plaintiff's fault is equal to or greater than the fault of the defendant. To the contrary, there are genuine issues of material fact regarding the nature and extent of the fault, if any, of both parties. The allocation of fault in this case shall be left for the jury to determine.

**IV.** <u>**Conclusion**</u>

For these reasons, the defendant's Motion to Dismiss/Motion for Summary Judgment [Doc. 28] will be **DENIED**.

**ORDER TO FOLLOW.**

**ENTER:**

　　s/ C. Clifford Shirley, Jr.
United States Magistrate Judge